UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 13-227** |
| **v.** | * | **SECTION: "B"** |
| **AKEIN SCOTT** | * | |
| | * * * | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
## FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255

The United States of America, through the undersigned Assistant United States Attorney, hereby opposes Akein Scott's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Rec. Doc. 538 (hereinafter "Petition"). Scott's petition, construed liberally, alleges that his trial counsel was deficient in underestimating Scott's projected sentence and recommending that he plead guilty. He also claims that his attorney failed to withdraw his guilty plea. However, Scott cannot establish that his counsel was ineffective, nor that any alleged ineffectiveness resulted in prejudice. Accordingly, the Government respectfully requests that the Court deny his petition without an evidentiary hearing.

## **RELEVANT FACTS AND PROCEDURAL HISTORY**

On December 11, 2014, a federal grand jury returned a Third Superseding Indictment charging Akein Scott and five other defendants with RICO conspiracy, violent crimes in aid of racketeering, conspiracy to distribute heroin and crack cocaine, and other offenses. Rec. Doc. 163. Akein Scott was charged in fourteen counts. *Id.* The indictment alleged that the defendants were members of a RICO enterprise called "FnD," which operated in the Seventh Ward of New Orleans from 2006 through 2014. *Id*. at 3. FnD engaged in, among other things, "conspiracy to distribute controlled substances, distribution of controlled substances, acts involving murder, assault with firearms, obstruction of justice, interstate travel in aid of racketeering, and other offenses." *Id.* at 2.

Scott pleaded guilty to the three conspiracies (Counts 1-3) and five different shootings in aid of those offenses (Counts 7, 9, 11, 13, 19), which together carried a mandatory minimum sentence of 20 years' imprisonment and a maximum of life. Rec. Doc. 273 at 1. He pled pursuant to an agreement wherein the Government agreed to dismiss six other counts against him that would have carried at least 45 years of additional mandatory imprisonment. *Id.* at 2. The plea agreement made clear that in fashioning an appropriate sentence, the Court was not bound by Scott's discussions with counsel about the appropriate Guidelines range and could "consider any and all 'relevant conduct' that [Scott] was involved in during the course of the conspiracy[.]" *Id.* at 4. While Scott reserved his right to bring a direct appeal of any sentence imposed in excess of the statutory maximum or to raise a claim of ineffective assistance of counsel, he expressly waived his right "to appeal or contest his guilty plea, conviction, [or] sentence," "to challenge the manner in which his sentence was determined," "to challenge any United States Sentencing Guidelines determinations and their application," or "to challenge his sentence collaterally." *Id.*

At his rearraignment, both Scott and counsel affirmed that they had reviewed the plea agreement and that Scott understood the promises therein. Plea Transcript at 9:11-9:17; 41:3-41:16 (Rec. Doc. 391) (hereinafter "Plea Tr."). Scott was advised of the mandatory minimum and the maximum possible sentences that he might face. *Id.* 10:2-13:20. He was informed that the Court was not bound by anything his lawyer told him about his sentence. *Id.* 23:6-24:22. The Court specifically instructed him that it was free to impose a sentence outside of the calculated Guidelines range. *Id.* 26:18-27:17. The Government summarized the plea agreement and noted that, as there was no agreement as to the specific sentence to be imposed, the sentence would rest in the Court's discretion. *Id.* 37:22-38:5. Scott affirmed that the written plea agreement comprised the only agreement between him and the Government and that he was not promised anything to induce his guilty plea aside from what was expressly set out in the written agreement. *Id.* 40:21-40:23; 45:11-45:17. His counsel affirmed that she had reviewed the plea agreement, charges, and Sentencing Guidelines with Scott and believed that he was pleading guilty knowingly and voluntarily. *Id.* 47:14-48:8. After the lengthy plea colloquy, the Court accepted Scott's guilty plea. *Id.* 51:6-52:1.

The factual basis for Scott's plea detailed his role in the RICO, drug, and gun conspiracies, as well as the five distinct shootings in which he was a triggerman. The first two of those shootings were committed just days apart in late March 2012 and involved Akein Scott and other men firing at associates of a rival drug dealer named Cornell Joseph (Counts 7 and 9); no one was injured in those shootings. Rec. Doc. 274 at 12-15. However, on July 16, 2012, Akein, with brother Stanley, shot at three Cornell Joseph associates, sending one of them to the hospital for gunshot wounds to the knee, shoulder blade, hand, and back (Count 11). *Id.* at 15-16. Weeks later on August 4, 2012, Akein participated in a shootout that sent a bullet into the leg of a 14-year-old female bystander

3

(Count 13). *Id.* at 16-19. Finally, and most notoriously, Akein and his brother Shawn, hoping to kill a rival gang member, fired into a second line parade on May 12, 2013—Mother's Day— striking their intended target along with 19 additional victims (Count 19). Four of the victims required surgeries, and the incident garnered national and international press. *Id.* at 23-27; Rec. Doc. 374 at 20-22.

The Government filed a sentencing memorandum, which included a motion for an upward departure or variance as to Akein Scott and his three brothers. Rec. Doc. 374.[1] The motion asserted, among other allegations, that Akein Scott, Travis Scott, and Stanley Scott murdered James Gould on February 2, 2012, in furtherance of the FnD conspiracy. *Id.* at 9-14. The Court held an evidentiary hearing on February 24, 2016, during which the Government presented witness testimony regarding that homicide and other overt acts by FnD members. Evidentiary Hearing Transcript (Rec. Doc. 382) (hereinafter "Evid. Tr."). Scott's attorney filed several briefs in opposition to the enhancement. *See* Rec. Docs. 336, 393, 406.

The United States Probation Officer's presentence investigation report ("PSR") calculated Scott's total offense level as 45 with a criminal history category I. Rec. Doc. 400 at 46. This resulted in a Guidelines range of life. *Id.* at 53. Scott's attorney submitted objections to the PSR, including an objection that the homicide of James Gould should not be included in the offense level, and that, in any case, it should not be assessed as first-degree murder. *Id.* at 58-59.

At the sentencing hearing, the Court overruled those objections. Sentencing Transcript at 37:13-39:15 (Rec. Doc. 461) (hereinafter "Sent. Tr."). The Court sentenced Scott to a term of life imprisonment plus 10 years. *Id.* at 93:4-96:1. This sentence consisted of life as to each of Counts 1 and 2, a term of 240 months as to Counts 3, 7, 9, 11, and 13, and 120 months as to Count 19 to

---

[1] This motion was filed under seal because it discussed the defendants' presentence investigation reports.

4

be served consecutively with all other sentences. *Id.* The Court rendered the sentence after weighing all of the § 3553(a) factors, and further noted that Scott's sentence would have been the same had the Court sustained all of Scott's objections to the PSR and the Government's motion for sentencing enhancements. *Id.*

Akein Scott filed a timely notice of appeal. Rec. Doc. 431. In his appellate brief, Scott asserted that the Government breached its plea agreement with him in presenting the Gould murder as relevant conduct. Scott Appellate Brief at 18 (attached as **Exhibit A**). He also asserted that, regardless of whether the Government's actions were purposeful, the Government's failure to disclose relevant conduct evidence prior to his plea rendered it unfair, and therefore his plea was not knowing or voluntary. *Id.* at 22. Scott also argued that his counsel was ineffective in advising him to plead guilty, because the Government did not provide his attorney with evidence of relevant conduct. *Id.* at 28. Scott filed a reply brief in which he reasserted his arguments. Scott Reply Brief (attached as **Exhibit B**).

On May 12, 2017, the Fifth Circuit issued a *per curiam* opinion affirming Scott's conviction and sentence. Fifth Circuit Opinion, Case No. 16-30300 (Rec. Doc. 520-1) ("Fifth Cir. Op.") (attached as **Exhibit C**). The appeals court rejected Scott's arguments that the Government breached its agreement because he "received the benefit of his bargain when the Government dismissed a host of counts against him in exchange for his guilty plea[,]" and he could not provide "any authority that the Government is obligated to provide a defendant with the evidence it will present at sentencing." *Id.* at 5. The Fifth Circuit further found his plea to be valid. It determined that his claim of being misled by other alleged assurances from the Government would have been tantamount to an outside "side agreement" that was "contradicted by the [plea] agreement's express terms." *Id.* at 6. Furthermore, Scott was fully apprised of the potential of a higher sentence

5

during his plea colloquy. *Id.* And, Scott's trial counsel acknowledged that the Government "emphasized during pre-plea discussion that its investigation of the Gould murder was ongoing[,]" and the Government "could not withhold evidence of relevant conduct from the sentencing court[;]" therefore, any misunderstanding was "unfounded." *Id.* at 6-7 (citations omitted). As to Akein Scott's ineffective assistance of counsel claim, the Fifth Circuit found that the record was not sufficiently developed to review the claim on direct appeal. *Id.* at 7.

Scott's conviction became final after the period to seek certiorari expired after the Fifth Circuit's ruling. *Clay v. United States*, 537 U.S. 522, 526 (2003). Scott's instant *pro se* petition was filed with the district court clerk on February 23, 2018, within one year of his conviction becoming final. Petition at 16. Therefore, this petition appears timely. *See* 28 U.S.C. § 2255(f)(1); *United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000).

## LAW AND ARGUMENT

Under 28 U.S.C. § 2255, a federal prisoner may move the court that imposed his sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a). Section 2255 identifies only four bases on which the motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.* A claim of error that is neither constitutional nor jurisdictional is not cognizable in a section 2255 proceeding unless the error constitutes a "fundamental" error that "renders the entire proceeding irregular or invalid." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

To receive a federal evidentiary hearing, the burden is on the habeas corpus petitioner to allege facts, which, if proved, would entitle him to relief. *Wilson v. Butler,* 825 F.2d 879, 880 (5th

Cir. 1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). A court need not "'blindly accept speculative and inconcrete claims' as the basis upon which to order a hearing." *Lavernia v. Lynaugh,* 845 F.2d 493, 501 (5th Cir.1988) (quoting *Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir. 1981)). "Nor is a hearing required when the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989).

Construing Scott's *pro se* petition liberally,[2] he asserts that his trial attorney was ineffective in advising him to plead guilty. Scott alleges that his counsel breached her duty to render effective assistance by "grossly underestimating" his Sentencing Guidelines. Petition at 6. He also asserts that his attorney failed to withdraw his guilty plea after learning that the Government intended to present evidence of the Gould murder. *Id.* at 7. Scott argues that, as a result, he was prejudiced by facing a life sentence instead of the Guidelines estimate that his attorney gave him of 168 to 210 months. *Id.*

Akein Scott's petition should be denied because his allegations are not supported by the law or the facts of the case. First, his attorney was not deficient in advising him to plead guilty because she advised him based upon the information available to her at the time. The government was not obligated to provide discovery regarding relevant conduct prior to Scott's plea, and in any case, the government did advise Scott that it was still investigating the Gould murder prior to the plea. Furthermore, his attorney was not deficient in deciding not to withdraw Scott's plea because the evidence of guilt was overwhelming. Withdrawing his plea would have exposed him to a much higher mandatory minimum sentence; therefore, his attorney's decision was a reasonable one

---

[2] *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("We construe pro se § 2255 petitions liberally.").

based upon the evidence and the potential sentence that he faced. Finally, Scott did not suffer prejudice due to any alleged ineffectiveness by his attorney.

    **I.**    *Strickland* **Standard for Ineffective Assistance.**

Scott alleges that his trial attorney was ineffective. To succeed, he must satisfy the well-established *Strickland* test. "A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984)). If this Court finds that the petitioner has made an insufficient showing as to either prong, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697; *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). It does not matter for Sixth Amendment purposes whether counsel was retained or appointed. *Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

With respect to *Strickland*'s "deficiency" prong, the Fifth Circuit has held that counsel's performance must be judged against "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention[,]" *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999), but "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted). "In reviewing counsel's performance, we make every effort to eliminate the distorting effects of hindsight, and attempt to adopt the perspective of counsel at the time of the representation." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (citing *Strickland*, 466

U.S. at 690). To establish prejudice, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In order to show prejudice in relation to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In order to prove ineffective assistance during sentencing, Scott must demonstrate: (1) deficiency caused by his attorney's failure to raise "solid, meritorious arguments based on directly controlling precedent," *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (internal brackets omitted); and (2) prejudice through a showing of a reasonable probability that, but for his attorney's action, he would have received a lower sentence. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

## II. Scott's Attorney Was Not Deficient under *Strickland*.

### A. Scott's Trial Attorney Was Not Deficient in Advising Him to Plead Guilty or in Calculating His Guidelines.

First, Scott's attorney was not deficient in advising him that relevant conduct may be considered by the Court at sentencing. He fully understood the consequences of his plea, and the minimum and maximum penalties that he could face by pleading guilty. As his argument contradicts his own sworn statement, this claim should be dismissed. *United States v. Vinnett*, Crim. A. No. 13-125, 2016 WL 705205, at *4 (E.D. La. Feb. 22, 2016) (Lemelle, J.) (holding "absent any 'extraordinary circumstances,' a district court should dismiss a § 2255 Motion relying on allegations that contradict sworn statements") (citing *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).

As set forth in more detail above, the record establishes that Scott knew the terms of his plea and reviewed it with his attorney. The plea agreement informed Scott that the Court was not bound by the Guidelines, and it could consider "relevant conduct" in fashioning a fair and just sentence. Rec. Doc. 274 at 3-4. At the plea hearing, Scott was sworn in. Plea Tr. 6:3-6:4. He and his counsel both confirmed that they had reviewed the plea agreement together. Plea Tr. 8:25-9:17. Scott stated that he understood that the Sentencing Guidelines were only advisory and that the Court could sentence him anywhere within the statutory range. Plea Tr. 23:6-24:24. The Court emphasized that it could consider various "personal history characteristics," such as Scott's background, education, and family support. Plea Tr. 27:2-27:13. Importantly, Scott's attorney confirmed that she explained to him that the Guidelines are merely advisory, and that Scott understood this fact in making his plea:

> THE COURT: Same questions to Ms. Tizzard and to Mr. Riehlmann in regards to going over the charges with your client agreeing that he's entered a knowing and voluntary plea of guilty and agreeing to his plea of guilty in that regard. Your responses?
>
> MS. TIZZARD: Yes, Your Honor, I have gone over the plea agreement with him. I've gone over the charges, I've gone over the sentencing guidelines. I've explained to him that is merely advisory, as Your Honor explained to him. I believe he understands all of that, and I believe that the plea is in his best interest.
>
> THE COURT: Okay. And you agree with his decision to plea?
>
> MS. TIZZARD: Yes.
>
> THE COURT: And that he's making a knowing and voluntary plea?
>
> MS. TIZZARD: Yes, Your Honor.
>
> THE COURT: Did you guarantee him a particular sentence?
>
> MS. TIZZARD: No.

Plea Tr. 47:14-48:8. Akein Scott confirmed that everything that his attorney stated was correct. *Id.* at 48:25-49:5.

Accordingly, there is no reasonable factual basis to find that Scott's attorney was deficient. Scott signed plea documents that explained the terms of his plea and the authority of this Court to sentence him, and such plea documents are accorded "great evidentiary weight." *United States v. Abreo*, 30 F.3d 29 (5th Cir. 1994). Scott again confirmed at the rearraignment that he understood the terms of his plea agreement and the Court's discretion to sentence him within the statutory range. His statements were made under oath, which the Fifth Circuit likewise accords "great weight." *United States v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002) (courts give "great weight to the defendant's statements at the plea colloquy.").

Scott argues that his attorney was deficient because she did not have the evidence regarding the Gould homicide. However, the Fifth Circuit stated in its opinion affirming Scott's conviction that there is no rule requiring that the Government provide a defendant with the evidence it will present at sentencing. Fifth Cir. Op. at 5. The Fifth Circuit explained that "[s]uch an obligation could, like material impeachment evidence, 'risk[] premature disclosure of Government witness information" and "disrupt ongoing investigations and expose prospective witnesses to serious harm." *Id.* (citing *United States v. Ruiz*, 536 U.S. 622, 631-32 (2002)). Instead, the Constitution "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights." *Id.* (citing *Ruiz*, 536 U.S. at 630).

In sum, Scott's trial counsel was not deficient because she provided a reasonable estimate based upon the evidence available to her prior to the plea. *See United States v. Sandoval*, No. Civ. A. H-03-3879, 2006 WL 2927680, at *7 (S.D. Tex. Oct. 10, 2006) (concluding that "[b]ecause Sandoval has not demonstrated that trial counsel acted unreasonably in estimating Sandoval's sentence under the guidelines with the information available at the time of the plea, Sandoval cannot prevail on his ineffective assistance claim."). Scott admitted in his plea agreement that he knew that relevant conduct could be presented at sentencing. He has conceded in his 2255 petition that the Government advised his attorney that agents were investigating the Gould homicide prior to his plea, and that the Government had not made a final decision regarding whether to present it at sentencing. Petition at 4. Scott therefore can show no error on the part of counsel "that affected [his] understanding of the consequences of pleading guilty." *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (holding that a defendant demonstrated a reasonable probability that he would not have pleaded guilty had he known he would face mandatory deportation as a result and that defense counsel's improper advice on that issue prejudiced the defendant and constituted ineffective assistance). As his argument again contradicts his own sworn statement, this claim should be dismissed. *See Vinnett*, Crim. A. No. 13-125, 2016 WL 705205, at *4 (holding "absent any 'extraordinary circumstances,' a district court should dismiss a § 2255 Motion relying on allegations that contradict sworn statements") (citing *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005)).

### B. Scott's Attorney Was Not Deficient In Her Decision Not to Withdraw His Guilty Plea.

Scott also asserts that his attorney was ineffective in failing to withdraw his guilty plea. He asserts that this decision resulted in his receiving a life sentence. However, his attorney's tactic was well within the bounds of reasonableness. Withdrawal arguably was not a viable option due

to the high standard for withdrawal. In any case, withdrawal would have resulted in a potentially higher sentence because of the overwhelming evidence of guilt. Therefore, his attorney reasonably concluded that Scott should not withdraw his plea and lose the benefits that Scott received in his plea agreement.

In order to claim that an attorney was deficient, a petitioner must provide specific allegations of deficiency based on the facts available at the time. Again, courts must "make every effort to eliminate the distorting effects of hindsight, and attempt to adopt the perspective of counsel at the time of the representation." *Blanton*, 543 F.3d at 235 (citation omitted). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331 (citation omitted). Conclusory allegations, without more, are not adequate to establish *Strickland* ineffectiveness. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (a "self-serving conclusory statement, . . . standing alone, falls far short of satisfying *Strickland*'s prejudice element").

Scott does not make specific allegations that his attorney's decision not to seek withdrawal was unreasonable. Scott fails to allege with specificity that he ever made a request to his attorney to withdraw his guilty plea. *E.g., Hollawell v. Stepanik*, Civ. A. 92-3562, 1993 WL 62726, at *2–3 (E.D. Pa. Mar. 8, 1993) (denying claim for ineffective assistance where defendant failed to show that he "provided anyone including his own attorney with notice of his desire to withdraw his plea"). Furthermore, had his attorney sought a withdrawal, Scott would have faced an uphill battle. There is no absolute right to withdraw a guilty plea, and the defendant bears the burden to establish a "fair and just reason" for withdrawal. *United States v. Puckett*, 505 F.3d 377, 382 (5th Cir. 2007) (citations omitted). In determining whether a district court abused its discretion in denying a

motion to withdraw a guilty plea, appellate courts refer to seven factors: (1) whether the defendant asserted his innocence, (2) whether withdrawal would prejudice the Government, (3) whether the defendant delayed in filing the withdrawal motion, (4) whether withdrawal would inconvenience the court, (5) whether adequate assistance of counsel was available, (6) whether the plea was knowing and voluntary, and (7) whether withdrawal would waste judicial resources. *United States v. Grant,* 117 F.3d 788, 789 (5th Cir. 1997). Based on these factors, Scott's counsel very well determined that withdrawal would not be successful because of the delay in the motion, the inconvenience and prejudice to the Court and Government, and because he made a knowing and voluntary plea.

Moreover, Scott's plea agreement included a Federal Rule of Evidence 410 waiver, meaning that his thirty-page factual basis potentially could be used against him as substantive evidence or, at a minimum, as impeachment. Rec. Doc. 273 at 1-2; *see United States v. Sylvester*, 583 F.3d 285, 289 (5th Cir. 2009) (upholding Rule 410 waiver permitting Government to use defendant's statements during case-in-chief). That factual basis detailed five separate shootings that Akein Scott committed. Each of these shootings was alleged to be in furtherance of the RICO and drug conspiracies, in violation of 18 U.S.C. § 924(c), which requires mandatory consecutive sentences. Scott benefitted through the Government's agreement to dismiss four of those counts at sentencing. Rec. Doc. 273 at 2. Accordingly, Scott's attorney reasonably determined that withdrawal would only expose Scott to a more assuredly long sentence if he was successful and then had to go to trial. Accordingly, his attorney was not deficient in deciding not to file a withdrawal.

### III. Any Alleged Deficiency Did Not Cause Prejudice.

Even if he could establish any deficiency in his counsel's performance, Scott cannot show prejudice. Where a defendant claims that his counsel was ineffective in advising him to plead guilty, in order to prove prejudice "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Bare allegations do not suffice; an individual "must convince the court" that going to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

In order to establish ineffective assistance at sentencing, the defendant must show that, but for his attorney's action, he would have received a lower sentence. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004). "[A]ny amount of actual jail time has Sixth Amendment significance[.]" *United States v. Conley*, 349 F.3d 837, 842 (5th Cir. 2003) (quoting *Glover v. United States,* 531 U.S. 198, 203 (2001)). However,"[s]urmounting *Strickland*'s high bar is never an easy task." *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014) (quoting *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010)). "In assessing prejudice," the Court must "consider the totality of the circumstances[.]" *Id.* And, a defendant cannot establish prejudice through mere "conclusory speculation." *Sayre*, 238 F.3d at 636.

Here, even if Scott received a higher sentence than he had hoped for, he cannot establish that, but for any alleged deficiency, he would have gone to trial or received a lower sentence. As outlined in the plea agreement, Scott received a significant benefit: the Government agreed to seek dismissal of six counts. Among those that the Government would seek to dismiss, Counts 8, 10, 12 and 14 each carried a mandatory sentence of 10 to 25 years, to be served consecutively to any other sentence. Rec. Doc. 273 at 2; *see* 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C) (requiring consecutive

sentence of not less than 10 years for discharge of a firearm, and a consecutive sentence of not less than 25 years for a "second or subsequent conviction under this subsection"). Another count that would be dismissed, Count 15, alleged possession of a firearm in furtherance of the RICO and drug conspiracies and mandated a consecutive five-year sentence. In sum, had he proceeded to trial and been convicted, Scott could have faced a mandatory minimum of at least 65 years instead of the minimum of 20 years that he received under his plea agreement. That 65-year minimum is conservative; had any of those shootings been deemed a "second or subsequent" conviction, Scott would have faced a minimum of 80 years in jail. Considering that Scott's attorney negotiated a 20-year minimum under the terms of the plea agreement, his attorney rationally decided not to risk losing that benefit by withdrawing Scott's plea and proceeding to trial.

That decision is bolstered by the fact that, had Scott gone to trial, it is likely that he would have been convicted. Scott signed a factual basis outlining the Government's evidence against him, Rec. Doc. 274, and he verified under oath that it was true, Rec. Doc. 391 at 43:15-44:20; *see Cothran*, 302 F.3d at 283 (courts give "great weight to the defendant's statements at the plea colloquy."). That thirty-page factual basis detailed the criminal activities of the FnD gang over the course of nearly ten years, both through physical evidence and the statements of at least fourteen cooperating witnesses. Rec. Doc. 274 at 1-8. It established that Travis Scott was the leader of FnD, and through his leadership, the gang controlled an area of New Orleans' Seventh Ward to sell drugs. *Id*. at 1-3. Akein Scott and other FnD members sold heroin and crack cocaine with other FnD members on a daily basis. *Id.* at 4-5. Witnesses would testify that they also saw Akein Scott and his fellow gang members with firearms. The factual basis detailed five shootings that Scott perpetrated in furtherance of the gang's activities. *Id.* at 12-26. Among them was the Mother's Day shooting, in which 19 people were injured. The evidence regarding that shooting

was irrefutable: multiple witnesses identified Akein Scott as the perpetrator, and he was caught on a surveillance video as he fired into the second-line parade. *Id.* at 23-26.

Based on the overwhelming evidence that would have been presented at trial, Akein Scott cannot bear his burden of proving that, had he gone to trial, his sentence would have been lower. "Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). Scott received a significant benefit by pleading guilty in light of the Government's evidence. He gained the opportunity to present mitigating evidence and persuade the Court to give him a lower sentence. Indeed, his attorney filed written sentencing memoranda, and Scott, his attorney, and his mother addressed the Court to seek a lower sentence. Sent. Tr. 74:8-76:13; 78:18-79:25. Had his attorney sought withdrawal of his guilty plea, then Scott would have had to proceed to trial. And, had he proceeded to trial, there is a high likelihood that he would have been found guilty and would have faced a much higher mandatory minimum term in prison. Accordingly, there is no reasonable probability that, but for any alleged deficiency, Scott's trial proceedings would have been different. *See United States v. Dyess*, 730 F.3d 354, 362 (4th Cir. 2013) (finding no prejudice where Government possessed "overwhelming evidence" of defendant's guilt and defendant "received a substantial benefit from pleading guilty—the Government dismissed nine of the eleven counts against him, one of which carried a 20-year mandatory minimum."); *Lambert v. Blodgett,* 393 F.3d 943, 984 (9th Cir. 2004) (no *Strickland* prejudice from counsel's alleged failure to uncover evidence supporting defense prior to guilty plea where there was "overwhelming evidence of guilt" and "little chance" that defense would have succeeded at trial).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Akein Scott's petition without an evidentiary hearing.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY


/s/ Matthew R. Payne
MATTHEW R. PAYNE
Assistant United States Attorney
La. Bar Roll No. 32631
650 Poydras St., Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3081

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2018, I filed the foregoing via ECF. I also certify that I mailed the foregoing document by first-class mail to Akein Scott, Reg. No. 33756-034, Coleman I USP, U.S. Penitentiary, P.O. Box 1033, Coleman, FL 33521, by placement in the United States Mail, postage prepaid and properly addressed, this 5th day of June, 2018.

/s/ Matthew R. Payne
MATTHEW R. PAYNE (32631)
Assistant United States Attorney
